UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Dartmouth-Hitchcock Clinic, et al.,
        Plaintiffs

        v.                                    Case No. 11-cv-358-SM
                                               Opinion No. 2012 DNH 169
Nicholas Toumpas, Commissioner,
N.H. Dept. of Health and Human Services,
        Defendant


**O R D E R**


The Commissioner's motion to dismiss the hospital and beneficiary plaintiffs' Supremacy Clause claims (Counts I-IV) required additional briefing in light of the Supreme Court's decision in Douglas v. Independent Living Ctr. of S. Cal., 132 S. Ct. 1204 (2012). The parties have addressed the issues specified by the court and have further developed their respective positions. Having carefully considered the matter, the court denies the Commissioner's motion to dismiss the Supremacy Clause counts, without prejudice to renewing the motion following receipt of the views of, or administrative action by, the Secretary of Health and Human Services.


**Discussion**

The plaintiff hospitals and Medicaid beneficiaries seek preliminary and permanent injunctive relief enjoining the defendant Commissioner from implementing certain Medicaid

reimbursement rate reductions on grounds, <u>inter alia</u>, that those rate reductions: 1) were dictated by state action taken pursuant to state statutes that directly contravene, and are therefore preempted by, applicable federal law; 2) were calculated using methodologies that are not part of the federally-approved state Medicaid plan, or, alternatively, were the product of a substantial misapplication of the federally-approved methodology such that it was effectively changed without required federal consent; and, 3) the rate reductions are inconsistent with the State's federal statutory obligations to set Medicaid reimbursement rates at a level adequate to "assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area."  42 U.S.C. § 1396(a)(30)(A) (hereafter "Section 30(A)").

As noted in the court's earlier order discussing the background facts and granting limited injunctive relief, the provider and beneficiary plaintiffs have made a strong showing that the reduced Medicaid reimbursement rates at issue are likely inconsistent with the State's legal obligations to set Medicaid rates at a level capable of sustaining the delivery of medical

care to the most needy, and in a manner consistent with the federally approved state Medicaid plan. The reduced rates are likely the impermissible product of a single and conclusive factor: state budgetary concerns. See Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 659 (9th Cir. 2009) ("State budgetary concerns cannot . . . be the conclusive factor in decisions regarding Medicaid."), vacated on other grounds sub nom. Douglas v. Indep. Living Ctr. of S. Cal Inc., 132 S. Ct. 1204 (2012); Amisub (PSL), Inc. v. Colorado Dep't of Social Services, 879 F.2d 789, 800-01 (10th Cir. 1989) ("While budgetary constraints may be a factor to be considered by a state when amending a current plan, implementing a new plan, or making the annually mandated findings, budgetary constraints alone can never be sufficient.").

While state budgetary concerns cannot conclusively dictate Medicaid reimbursement rates, they do play a significant and legitimate role in the rate-setting process. But, even where significant state budget issues arise, still, Medicaid reimbursement rates must be set by participating states in accordance with methodologies and standards that are published in a state plan and approved by the United States Secretary of Health and Human Services (currently through the Centers for Medicare and Medicaid Services ("CMS")). And, those rates must

meet minimum federal statutory standards, which generally require that the rates be adequate to assure quality and availability of medical care for those most in need of it.  See Section 30(A).

Plaintiffs have conceded that they cannot bring a private cause of action to enforce Section 30(A)'s provisions. Nevertheless, they say they may challenge the constitutionality of state statutes, as applied, under the Supremacy Clause, to the extent those state laws dictate reduced Medicaid rates that are invalid under federal law.  The Commissioner responds that plaintiffs cannot be permitted to use the Supremacy Clause to indirectly assert a private cause of action aimed at enforcing Section 30(A)'s provisions.  But that argument misses an important and distinct point.

Plaintiffs are challenging the constitutionality of two state statutes and the rate-setting action taken under the power purportedly established by those statutes.  They are not, strictly speaking, challenging the Commissioner's rate-setting action under the Medicaid Act itself (which plaintiffs say amounted to little more than acquiescence in unlawful rate-setting directives issued by the Governor and Legislature).  That is, plaintiffs do not sue to establish Medicaid-compliant rates,

but rather seek to invalidate what they assert are unlawful rates dictated by preempted state law.

"Although participation in the Medicaid program is entirely optional, once a State elects to participate, it must comply with the requirements of [the Act]." Harris v. McRae, 448 U.S. 297, 301 (1980). One such requirement is that the State must have (and must adhere to) a federally-approved plan for reimbursing health care providers, 42 U.S.C. §§ 1396a(a), 1396d(a), and the State must also promptly file any "[m]aterial changes in State law, organization, or policy, or in the State's operation of the Medicaid program," 42 C.F.R. § 430.12(e).

To the extent N.H. Rev. Stat. Ann ("RSA") 126-A:3, VII(a) and RSA 9:16-b, the state statutes at issue, authorize the Governor and Legislature to usurp the Commissioner's obligations under federal law to properly set Medicaid reimbursement rates — by dictating across-the-board percentage reductions completely divorced from the approved rate-setting methodology published in the State's approved plan, and without regard to the processes and standards required by the Medicaid Act — those state statutes would no doubt be declared invalid (as applied) under the

Supremacy Clause.[1]  Such state legislation would necessarily purport to override clear provisions of federal law and would "seriously compromise important federal interests."  <u>Pharm. Research & Mfrs. of Am. v. Walsh</u>, 538 U.S. 644, 671 (2003) (Breyer, concurring).  <u>See also</u> <u>Arkansas Elec. Cooperative Corp. v. Arkansas Pub. Serv. Comm'n</u>, 461 U.S. 375, 389 (1983).

The New Hampshire statutes at issue here, as applied (<u>i.e.</u>, the rate-setting actions taken under their authority) are highly suspect.  But, as noted in the court's earlier order, RSA 126-A:3 is by its terms permissive, rather than mandatory (the

---

[1]  RSA 126-A:3, VII(a) provides in pertinent part:

> If [Medicaid outpatient reimbursement] expenditures are projected to exceed the annual appropriation, the department may recommend rate reduction for providers to offset the amount of any such deficit.  The department of health and human services shall submit to the legislative fiscal committee and to the finance committees of the house and the senate, the rates that it proposes to pay for hospital outpatient services.  The rates shall be subject to the prior approval of the legislative fiscal committee.

RSA 9:16-b provides in pertinent part:

Notwithstanding any other provision of law, the governor may, with the prior approval of the fiscal committee, order reductions in any or all expenditure classes within any or all department . . . if he determines at any time during the fiscal year that:

> (a)  Projected state revenues will be insufficient to maintain a balanced budget and the likelihood of a serious deficit exists.

Commissioner "may" seek approval by the Fiscal Committee of a "proposed" rate reduction). RSA 9:16-b, is broad in scope, and does not directly focus on Medicaid rate-setting. Each statute might plausibly be construed in this context as (implicitly) requiring that any directed Medicaid rate reductions must also necessarily comport with substantive and procedural rate-setting requirements mandated by controlling federal law. It is also conceivable that what may well have been intended by the Governor and Legislature as arbitrary budget-driven rate reductions, in disregard of the State's voluntarily-assumed federal legal obligations, might nevertheless be found to be consistent with those controlling federal obligations and, therefore, might eventually be approved by the Secretary of Health and Human Services. But the Secretary has yet to weigh-in on those issues.

That fact puts this case in a different posture than <u>Douglas</u>. Here, there is no final administrative decision by the Secretary with respect to the propriety of the challenged rate reductions, and it is not even clear that an administrative proceeding that will produce a final (appealable) agency decision is ongoing. Thus, it is hardly clear that plaintiffs are without a Supremacy Clause remedy, or that they must first pursue administrative remedies (that may not be available).

While a strong minority in <u>Douglas</u> would have held that the Supremacy Clause is unavailable to medical service providers as a means to enforce state obligations under Spending Clause legislation (like the Medicaid Act) in which Congress has not created a private right of action, the Court did not actually adopt that view.  Rather, the Court bypassed the Supremacy Clause issue altogether, finding that intervening administrative action by the Secretary of Health and Human Services put the case in a different posture and posed a risk that the Supremacy Clause claims, if adjudicated, would result in a decision that either subjected states to conflicting interpretation of federal law, or was redundant.  <u>See</u> <u>Douglas</u>, 132 S. Ct. at 1211.  But in <u>Douglas</u>, there was an appealable final agency administrative decision.  Here there is none.  Consequently, it is not apparent at all that plaintiffs' Supremacy Clause claims are, at this point, either unnecessary or redundant.

In this circuit, applicable precedent generally supports plaintiffs' claim of right to a cause of action challenging the validity of state laws under the Supremacy Clause on grounds that they conflict with federal law and undermine important federal interests.  <u>See e.g.</u> <u>Pharm. Research & Mfrs. of Am. v. Concannon</u>, 249 F.3d 66 (1st Cir. 2001), aff'd <u>Pharm. Research & Mfrs. of Am. v. Walsh</u>, 538 U.S. 644 (2003).  So, while the differing views

expressed in Douglas concededly add up to serious doubt about the future viability of private suits like this one, the law remains unchanged by Douglas.  This court is obliged to rule in a manner consistent with applicable circuit and Supreme Court precedent and cannot ignore that precedent in anticipation of future change.  See Lewis v. Alexander, 685 F.3d 325, 2012 WL 2334322, * 14 (3d Cir. June 20, 2012).  See also Koenning v. Suehs, 2012 WL 4127956 (S.D. Tx. Sept 18, 2012); Arizona Hosp. and Healthcare Ass'n v. Betlach, 2012 WL 999066, * 11 (D. Ariz. Mar. 23, 2012) ("[a]lthough Douglas provides ample reason to doubt the viability of such a claim, the current state of Ninth Circuit law seems to support such claims under the Supremacy Clause.").

Plaintiffs' Supremacy Clause claims (Counts I-IV) are not subject to dismissal at this point.  That conclusion gives rise to another potentially critical matter.  As noted in Douglas and by the court of appeals, the goals expressed in Section 30(A) of the Medicaid Act (efficiency, quality of care, geographic equality, reasonable rates) are "highly general and potentially in tension."  Long Term Care Pharm. Alliance v. Ferguson, 362 F.3d 50, 58 (1st Cir. 2004).  Indeed, "read literally the statute does not make these [criteria] directly applicable to individual state decisions; rather state plans are to provide 'methods and procedures' to achieve these general ends."  Id.  "Thus, the

generality of the [Medicaid Act's] goals and the structure for implementing them suggest that plan review by the Secretary is the central means of enforcement intended by Congress." Id. Accordingly, "the [Secretary of Health and Human Services'] expertise is relevant in determining [the Act's] application." Douglas 132 S.Ct. at 1211. "After all, the agency is comparatively expert in the statute's subject matter" and Congress has committed to the Secretary the power to administer the Medicaid program, including the power to exercise discretion in enforcing its requirements. Id.

Here, as in Douglas, the underlying substantive legal question is whether the challenged New Hampshire statutes, as applied, are sufficiently inconsistent with federal statutory provisions that the imposed rate reductions should be invalidated and future implementation of those reduced rates enjoined. It is evident, then, that the Secretary's views as to whether New Hampshire acted inconsistently with its legal obligations under the Act, would materially aid the court in deciding whether injunctive relief should issue. That is to say, the primary jurisdiction doctrine may well favor referring those potentially dispositive issues to the Secretary (CMS) for her initial consideration and expert resolution. Referral seems appropriate here as the Secretary's views will certainly advance the sound

disposition of this litigation, facilitate the Secretary's own exercise of her administrative enforcement authority, and insure uniformity and consistency in results in similar cases nationwide.  See e.g. Texas & P. R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426 (1907); Ass'n of Intern. Auto. & Mfrs., Inc. v. Comm'n of Mass. Dept. of Envtl. Protection, 163 F.3d 74 (1st Cir. 1998).

The doctrine of primary jurisdiction seeks to promote proper relationships between the courts and administrative agencies charged with particular administrative duties.  See United States v. Western P. R. Co., 352 U.S. 59, 63-64 (1956).  When a cognizable legal claim turns on issues that fall within the special competence of an administrative agency, and the court would benefit from the agency's expertise, it is appropriate to refer those issues to the agency and obtain its views.  See Pejepscot Indus. Park v. Maine Central R.R., 215 F.3d 195, 205 (1st Cir. 2000).  Indeed, "if the issues referred to the agency . . . are critical to judicial resolution of the underlying dispute, the court cannot proceed with the trial of the case until the agency has resolved those issues.  In many circumstances, the court that referred the issues to the agency also must wait until the agency's decision has been either upheld or set aside by a different reviewing court."  Assn. of Intern.

Auto Mfrs., Inc. v. Commissioner, 196 F.3d 302, 304 (1st Cir. 1999) (quoting 2 Kenneth Culp Davis & Richards Pierce, Jr., Administrative Law Treaties, 271, 272-73 (3d ed. 1994)).

The defendant Commissioner asserts that the Secretary has been actively reviewing the propriety of the rate reductions at issue, as well as the procedure that produced them, for some months now.  Regularly scheduled meetings between CMS and the Commissioner's office have taken place and the Commissioner has apparently responded in detail to numerous CMS requests for information and clarification.  Indeed, it is suggested that some pending state plan amendment (SPA) requests have been modified in ways that may be pertinent to the issues raised in this litigation.  Given that circumstance, the Secretary may well be fully prepared to assist the court in addressing some or all of the following questions:

   1)   Whether the issues raised by plaintiffs with
        respect to the validity of rate-reductions fall
        within the primary jurisdiction of the Secretary
        such that the case should be stayed pending final
        administrative resolution of those issues.  See
        Ass'n of Intern. Auto. Mfrs., 196 F.3d at 304;

   2)   What, if any, administrative proceeding is ongoing
        relative to determining the propriety of the rate
        reductions at issue;

   3)   Whether any final agency action is expected with
        respect to the rate reductions that are subject to the
        complaint in this case, and if so, when;

12

    4)    Whether, in the Secretary's view, the Commissioner's imposition of the rate reductions at issue comports with the substantive and procedural requirements of the Medicaid Act and implementing regulations;

    5)    Whether the imposed rate reductions at issue have been, or are likely to be, approved by the Secretary;

    6)    Whether issuance of equitable relief enjoining implementation of the reduced rates at issue would be in the public interest in that such an injunction would facilitate the Secretary's exercise of her enforcement responsibilities under the Medicaid Act.

Given that plaintiffs have made a substantial showing that hardship is being suffered by both providers and Medicaid eligible patients due to the reduced rates, and that continuing enforcement of those rates, if unlawful, will at some point result in irreparable injury (e.g., loss of medical care facilities, providers, and the concomitant inability of Medicaid patients to obtain needed care), the court will schedule a hearing at which the Secretary's expert views, and those of the parties, will be heard on the questions posed above, as well as on any related matters.  The Secretary is invited to appear on an amicus basis or otherwise, through counsel, and the Secretary and parties may address the issues raised either orally or in written submissions, as they prefer.

## Conclusion

The defendant's motion to dismiss Counts I-IV of the complaint (document no. 48) is denied.

The Clerk shall schedule a hearing on the matter on November 1, 2012. A copy of this order shall be provided to the United States Attorney, who shall insure that the appropriate responsible officers within the Department of Health and Human Services are made aware of its contents in sufficient time to allow a meaningful response to the issues raised, particularly the Secretary's position with respect to her primary jurisdiction to administratively determine the validity of the rate reductions at issue under the Medicaid Act.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

September 27, 2012

cc: John P. Kacavas, United States Attorney, NH
    Martha Van Oot, Esq.
    William L. Chapman, Esq.
    Anthony J. Galdieri, Esq.
    Emily P. Feyrer, Esq.
    Gordon J. MacDonald, Esq.
    W. Scott O'Connell, Esq.
    John E. Friberg, Jr., Esq.
    Erica Bodwell, Esq.
    Mitchell B. Jean, Esq.
    Nancy J. Smith, Esq.
    Jeanne P. Herrick, Esq.
    Laura E. B. Lombardi, Esq.
    Constance D. Sprauer, Esq.